UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-cv-00386-FL

| | |
|---|---|
| NATIONAL ALLIANCE FOR ACCESSIBILITY, INC., *a Florida Non-Profit Corporation*, and DENISE PAYNE, *Individually*, <br><br> Plaintiffs, <br><br> v. <br><br> BELK, INC., *A Delaware Corporation*, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) **ORDER** ) ) ) ) ) ) |

This matter comes before the court on defendant's motion to dismiss, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure (DE 11). Plaintiffs responded in opposition to the motion to dismiss (DE 17), and no reply was filed. Defendant has filed a suggestion of subsequently decided authority (DE 19). The issues raised are ripe for ruling, and, for the reasons that follow, defendant's motion to dismiss will be granted.

## BACKGROUND

On June 27, 2012, plaintiffs, Denise Payne ("Payne") and National Alliance for Accessibility, Inc. ("National Alliance"), brought this action seeking injunctive relief against defendant, Belk, Inc. ("Belk"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189.

Payne is a Florida resident. She has cerebral palsy, which renders her paralyzed from the waist down, is unable to effectively walk or stand, requires a wheelchair to ambulate, and has only limited use of her hands. Payne is a member and founder of National Alliance, a Florida non-profit corporation that, among other things, works to ensure that places of public

accommodation are accessible to the disabled by suing such places that it believes are not ADA compliant. Belk is a Delaware corporation doing business at the Tallywood Shopping Center in Fayetteville, North Carolina.

Payne visited Belk's store located in the Tallywood Shopping Center (the "Tallywood store") on October 21, 2011. Payne noted several perceived violations of the ADA in the Tallywood store, including non-compliant exterior ramps and interior pathways and restrooms. Payne prefers to shop at Belk, but the Tallywood store is not as accessible to her as it is to the non-disabled. For example, she had difficulty moving through the narrow aisles and was unable to use the restroom unaided. Payne initially planned to visit the Tallywood store again on a return trip to Fayetteville in September 2012, but her trip was delayed and rescheduled for October 2012.

Although Payne lives in Florida, she travels to North Carolina with friends two to three times a year and has been to North Carolina nine times over the past few years. There are nine members of National Alliance residing in North Carolina, and Payne meets with these members and other friends during her trips to North Carolina to coordinate recruitment of new National Alliance members. She is also in the process of establishing local branches of National Alliance in several North Carolina cities.

On August 2, 2012, defendant moved to dismiss the complaint, arguing that plaintiffs lack standing under Article III and the ADA, to which plaintiffs timely responded in opposition. On August 13, 2012, on the consent motion of defendant, the court continued the Rule 26(f) conference and postponed entry of the Rule 16(b) Scheduling Order, the deadline for Rule 26(a) initial disclosures, and the conduct of discovery in this matter pending ruling on the instant motion to dismiss. On March 18, 2013, defendant filed a notice of suggestion of subsequently

2

decided authority regarding the dismissal of another ADA case involving these same parties, Nat'l Alliance for Accessibility, Inc. v. Belk, Inc., No. 5:12-cv-394-BR, 2013 WL 1122629 (E.D.N.C. Mar. 18, 2013).

## DISCUSSION

### A. Standard of Review

A challenge to standing is properly considered as a challenge to subject matter jurisdiction under Rule 12(b)(1). See, e.g., White Tail Park, Inc. v. Stroube, 413 F.3d 451, 459 (4th Cir. 2005). Subject matter jurisdiction may be challenged at any time, and if it is lacking the case must be dismissed. See Fed. R. Civ. P. 12(h)(3). In considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider evidence outside the pleadings without converting the motion into one for summary judgment. Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). The plaintiff has the burden of establishing jurisdiction. Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). Where, as here, the defendant has not provided evidence to dispute the veracity of the jurisdictional allegations in the complaint, the court accepts the facts alleged in the complaint as true, just as it would under Rule 12(b)(6). Kerns v. United States, 585 F.3d 187, 192–93 (4th Cir. 2009).

"Standing is a threshold jurisdictional question which ensures that a suit is a case or controversy appropriate for the exercise of the courts' judicial powers under the Constitution of the United States." Pye v. United States, 269 F.3d 459, 466 (4th Cir. 2001). To satisfy the "irreducible constitutional minimum of standing," a plaintiff must make three showings. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). First, she must show an "injury in fact," meaning "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Id. (internal quotation marks and citations omitted).

3

Second, she must show "a causal connection between the injury and the conduct complained of." Id. Finally, she must show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (internal quotation marks omitted).

Where, as here, a plaintiff seeks injunctive relief, she also must "allege and prove that there is a 'real and immediate threat' that [s]he will be wronged again." Daniels v. Arcade, L.P., 477 Fed. App'x 125, 129 (4th Cir. 2012) (quoting Bryant v. Cheney, 924 F.2d 525, 529 (4th Cir. 1991) (citations omitted)). A plaintiff's "profession of an 'intent' to return to the places [she] had visited before" is not enough to establish standing to seek injunctive relief. Lujan, 504 U.S. at 564. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" required by the Constitution. Id. In determining whether a plaintiff has demonstrated a "real and immediate threat of future harm," this court has at times considered, among other things, the following four factors: (1) the proximity of plaintiff's residence to the property in question, (2) plaintiff's past patronage of the public accommodation, (3) the definitiveness of plaintiff's plan to return, and (4) whether plaintiff frequently travels near the establishment. See, e.g., Payne v. Sears, Roebuck and Co., No. 5:11-CV-614-D, 2012 WL 1965389, at *3 (E.D.N.C. May 31, 2012); Nat'l Alliance for Accessibility, Inc. v. Waffle House, Inc. ("Waffle House I"), No. 5:10-CV-375-FL, 2011 WL 2580679, at *2 (E.D.N.C. June 29, 2011). But cf. Daniels, 477 F. App'x at 129 (declining to formally endorse four-factor test as it was not helpful under the circumstances of that particular case).

4

## B. Analysis

### 1. Standing as to Payne

Payne's Florida residence is roughly 700 miles from the Tallywood store. She has visited North Carolina nine times over the past several years, but has only been to the Tallywood store on one occasion. While Payne did state in her complaint and affidavit that she would be in Fayetteville again in October 2012 and that she planned to visit the Tallywood store, this assertion, when viewed in light of the other facts and allegations, is not plausible and, thus, is insufficient to establish the requisite real and immediate threat of future harm. The Fourth Circuit's decision in Daniels is instructive on this point.

In Daniels, the Fourth Circuit acknowledged that the plaintiff "was required to state a plausible allegation that there is a likelihood that he will suffer future harm[.]" 477 Fed. App'x at 130. The Daniels plaintiff had alleged that he intended to continue to visit the defendant's market in the future for his shopping needs. Id. The Fourth Circuit explained that the allegation must be accepted as true for purposes of the motion to dismiss and that it deemed the allegation plausible based on the close proximity of the plaintiff's residence to the defendant's market. Id. The court also noted that, due to the plaintiff's "scant" litigation history, "we are not faced with the issue here whether a party's extensive litigation history may be used to determine the plausibility of his alleged future intentions." Id. Payne's circumstances are materially distinct from those of the Daniels plaintiff.

Payne does not live near the Tallywood store. While she alleges to have visited Fayetteville several times, other facts coupled with her litigation history undermine this allegation. Plaintiff has only visited North Carolina nine times over the past few years, and yet she has filed approximately 80 ADA actions over the last three years related to properties across

5

North Carolina, including those in Asheville (Nat'l Alliance For Accessibility, Inc. v. W & K of Asheville, LLC, No. 1:12cv00024–MR–DLH, 2013 WL 30131 (W.D.N.C. Jan. 3, 2013)), Cary (Sears, 2012 WL 1965389), Raleigh (Waffle House I, 2011 WL 2580679), Winston-Salem (Nat'l Alliance For Accessibility, Inc. v. Macy's Retail Holdings, Inc., No. 1:11–cv–877, 2012 WL 5381490 (M.D.N.C. Oct. 30, 2012)), High Point (Nat'l Alliance For Accessibility v. Big Lots Stores, Inc., No. 1:11–cv–941, 2012 WL 1440226 (M.D.N.C. April 26, 2012)), Greensboro (Nat'l Alliance for Accessibility, Inc. v. Big Lots Stores, Inc., No. 1:11–cv–730 (M.D.N.C. Sept. 13, 2011)), and other North Carolina cities. Given Payne's limited history of travel to North Carolina, it is simply not plausible that she frequently travels to Fayetteville or any of these other North Carolina cities, or that she is likely to return to the Tallywood property in the future, despite her allegations to the contrary. Accordingly, Payne has failed to make any plausible allegation that she faces a real and immediate threat of future harm.

Moreover, several courts have dismissed for lack of standing nearly identical cases by Payne, including a case plaintiffs filed against this same defendant regarding another Belk store in Fayetteville. See Belk, Inc., 2013 WL 1122629, at *3 (dismissing case based on plaintiffs' failure to allege facts that establish standing). See also Payne v. AAC Investments, Inc., No. 5:12-CV-00264-F, 2013 WL 791261, at *3 (E.D.N.C. Mar. 4, 2013) (dismissing case for lack of standing and citing line of cases holding that National Alliance and Payne lack standing to bring ADA lawsuits against properties located in North Carolina) (citing W & K of Asheville, LLC, 2013 WL 30131; Macy's, 2012 WL 5381490; Nat'l Alliance For Accessibility, Inc. v. NCP Western Blvd. LLC, No. 5:11–CV–357–FL, 2012 WL 3834931 (E.D.N.C. Sept. 4, 2012); Nat'l Alliance For Accessibility, Inc. v. Big Lots Stores, Inc., No. 5:11–CV–741–FL, 2012 WL

3835870 (E.D.N.C. Sept. 4, 2012); Payne v. TR Assocs., LLC, 880 F. Supp. 2d 702 (2012); Sears, 2012 WL 1965389; Big Lots, 2012 WL 1440226).

Plaintiffs argue that applying the test for Article III standing for injunctive relief so as to deny Payne standing would violate the terms of the ADA by denying injunctive relief to a person subjected to discrimination on the basis of disability. However, the court cannot ignore "the irreducible constitutional minimum of standing" no matter the breadth of the ADA. Lujan, 504 U.S. at 560. See also TR Assocs., LLC, 880 F. Supp. 2d at 707 ("Congress can properly extend standing, through legislation, to the limits of Article III of the Constitution, but those limits still remain and must be satisfied in every case.") (citing Warth v. Seldin, 422 U.S. 490, 500 (1975)). Payne has failed to allege a real and immediate threat that she will be wronged again and, thus, lacks standing to pursue injunctive relief through the ADA.

### 2. Standing as to National Alliance

National Alliance contends that it has associational standing, derivative of Payne's standing. Having concluded that Payne does not have standing, and plaintiffs having specifically identified no other members of the organization with standing to sue, National Alliance cannot assert associational standing. See Retail Indus. Leaders Ass'n v. Fielder, 475 F.3d 180, 186 (4th Cir. 2007) (listing three requirements for associational standing: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.") (internal footnote omitted) (citing Hunt v. Wash. State Apple Advertising Comm'n, 432 U.S. 333, 345 (1977)).

National Alliance also contends that it has organizational standing independent of Payne, based on the economic harm it suffered as a result of defendant's violations. "There is no

7

question that an association may have standing in its own right to seek judicial relief from injury to itself and to vindicate whatever rights and immunities the association itself may enjoy." Warth, 422 U.S. at 511. "An organization may suffer an injury in fact when a defendant's actions impede its efforts to carry out its mission." Lane v. Holder, 703 F.3d 668, 674 (4th Cir. 2012) (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982)). While a drain on resources may form the basis of an injury in fact under certain circumstances, a diversion of resources that "results not from any actions taken by [the defendant], but rather from the [organization's] own budgetary choices" is insufficient. Id. (citing Fair Emp't Council of Greater Wash., Inc. v. BMC Mktg. Corp., 28 F.3d 1268, 1276 (D.C. Cir. 1994)).

National Alliance argues that it has been forced to expend significant resources to identify defendant's discriminatory practices, which satisfies the injury in fact requirement. However, identifying and removing barriers to the disabled is a stated purpose of National Alliance, which it has furthered through voluminous litigation. See Compl. ¶ 8 ("The NAA has been actively involved in suing places of public accommodations with ADA violations that prevent disabled individuals from enjoying these public accommodations equally as non-disabled individuals."). National Alliance has, by choice, expended significant resources to further its mission trough litigation against perceived ADA violators such as defendant. Thus, the alleged injury is not attributable to defendant and cannot serve as a basis for organizational standing. See Belk, Inc., 2013 WL 1122629, at *4 ("[B]ecause National Alliance's suit against defendant to enforce ADA compliance appears to be the consummation of the organization's purpose, National Alliance has not alleged an injury to the organization itself and therefore lacks organizational standing.") (citing Nat'l Alliance for Accessibility, Inc. v. Variety Stores, Inc., No. 5:12–CV–133–D, 2013 U.S. Dist. LEXIS 4528, at *2 (E.D.N.C. Jan. 11, 2013); Goldstein v.

8

Costco Wholesale Corp., 278 F. Supp. 2d 766, 769–72 (E.D. Va. 2003); Clark v. Burger King Corp., 255 F. Supp. 2d 334, 344 (D. N.J. 2003)).

In sum, because Payne has not demonstrated a real and immediate threat of future harm and National Alliance has not demonstrated an independent basis for organizational standing, plaintiffs lack Article III standing to bring this lawsuit. Accordingly, defendant's motion to dismiss will be granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss (DE 11) is GRANTED. The Clerk is directed to close this case.

SO ORDERED, this the 15 day of April, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge